CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS    2017 MAY 25  PM 3: 54
### ABILENE DIVISION

DEPUTY CLERK

| | | |
|---|---|---|
| **ROBERT STEVEN REITZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 1:16-CV-0181-BL** |
| | § | |
| **CITY OF ABILENE, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

### REPORT AND RECOMMENDATION

The Court has under consideration Defendant City of Abilene's First Amended Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (doc. 26) (hereinafter "City's Mot."), Defendant John R. Wilson III's First Amended Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (doc. 27) (hereinafter "Wilson Mot."), and Defendant Jimmy Woods' First Amended Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (doc. 28) (hereinafter "Woods Mot."). The motions are fully briefed and ready for ruling. This action has been referred pursuant to 28 U.S.C. § 636(b) and Second Amended Special Order No. 3-301.

After reviewing the briefing, pleadings, and applicable law and because the parties have not consented to have all further proceedings in this case conducted by a magistrate judge, the under-signed issues this report and recommendation; recommends that the Court deny entirely the Wilson Motion and grant in part and deny in part each of the other motions to dismiss; and directs the Clerk of Court to reassign this case to Senior District Judge Sam R. Cummings in accordance with Second Amended Special Order No. 3-301.

# I. BACKGROUND[1]

Pursuant to 42 U.S.C. § 1983, Plaintiff Robert Steven Reitz (also known as "Bobby") filed this civil action against the City of Abilene ("the City"), Officer Jimmy Woods "("Woods"), and Detectives John R. Wilson III ("Wilson") and Larry Tatum ("Tatum"). *See* Pl.'s First Am. Orig. Compl. (doc. 21) (hereinafter "Am. Compl.")[2] at 1, 5. In general, Plaintiff seeks monetary and declaratory relief, including exemplary and punitive damages, for alleged violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution. *Id.* ¶¶ 1, 63-70. He sues the City under a municipal liability theory and the individual defendants in both their individual and official capacities. *Id.* at 2 n.3.

In September 2015, Plaintiff, a United States citizen and employee of American Airlines, lived in an apartment near his place of employment. *Id.* ¶ 12. At all relevant times, Plaintiff had neither committed nor attempted to commit any crime and had not violated any law or acted suspiciously or furtively. *Id.* ¶¶ 15, 20, 34. He was non-violent, unarmed, and did nothing to breach the peace or pose a threat to any person. *Id.* ¶¶ 20, 36. He made no attempt to be rude to or unco-operative with defendants and did not improperly try to evade them. *Id.* ¶ 37.

The events leading to this litigation commenced on the afternoon of September 4, 2015, when Plaintiff was alone in his apartment. *Id.* ¶ 38. At that time, Officer Woods and officers under his

---

[1]The factual background is either uncontested or viewed in a light most favorable to Plaintiffs in accordance with the applicable standard for considering motions to dismiss. Wilson and Woods characterize Plaintiff's claims as "out-landish" and suggest that Plaintiff has selectively recited the facts. *See* Wilson Mot. at 11; Woods Mot. at 11. Plaintiff, however, is the master of his complaint, *see Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995), and the well-established standards for addressing motions to dismiss limit what the courts may consider.

[2]The "amended complaint entirely supersede[s] and t[akes] the place of the original complaint." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 740 (5th Cir. 1986). Therefore, although Plaintiff's briefing indicates that he incorporates the original and amended complaints by reference, the incorporation has no effect as to the original complaint. In addition, the incorporation of the amended complaint is unnecessary because the Court reviews the operative pleading even without the incorporation when considering a motion to dismiss.

command burst into Plaintiff's apartment without a warrant. *Id.* ¶¶ 33, 38. The officers rammed the front door without advance notice and threw concussion/smoke grenades near Plaintiff where they detonated with such noise that they caused him pain and made him unable to hear properly. *Id.* ¶ 39. They also emitted dark smoke making it difficult for him to see and generated enough heat to burn the carpet. *Id.* Although Plaintiff had not been and was not doing anything menacingly, the officers forced him to the floor, roughly handled him, and handcuffed him. *Id.* ¶ 40. The officers aggressively and roughly searched the apartment. *Id.* They kicked open an interior door with such force to permanently damage it and damaged his personal property including a fish tank/aquarium. *Id.* ¶ 41. At no point did Plaintiff resist the officers or threaten them. *Id.* Woods smelled of alcohol and the intrusion damaged Plaintiff's home and personal property as well as terrorized him at gunpoint. *Id.* ¶ 38.

After rampaging and ransacking Plaintiff's apartment and possessions, the officers publically removed him from his apartment while he remained handcuffed and forced him into the back seat of a squad car. *Id.* ¶ 43. He was arrested and forcibly detained against his will. *Id.* Knowing that Plaintiff had done nothing wrong, Officer Woods took Plaintiff to a police facility where he and others forced Plaintiff to sit through a custodial interrogation without advising him of his rights or providing an opportunity to secure or consult with an attorney. *Id.* Officers took Plaintiff's cell phone and removed a chip or part. *Id.* That examination showed that the phone had not been used to make a 911 call to the Abilene Police Department. *Id.* During the interrogation, Plaintiff tried to be polite under the circumstances but never consented to his involuntary holding. *Id.*

After the interrogation, Officer Woods returned Plaintiff to his apartment. *Id.* ¶ 44. At that time, he told Plaintiff that someone had made a 911 call, that he heard the call, and he knew that the

3

voice he heard was not Plaintiff's voice. *Id.* Plaintiff provides no details about the 911 call or how the call otherwise relates to this litigation. Upon his return, apartment management wanted to evict him but officers, including Officer Woods, told them that Plaintiff had done nothing wrong and that the City should pay for the damages to the apartment. *Id.* ¶¶ 44-45.

On or about September 18, 2015, Plaintiff obtained a copy of the police report, saw Officer Woods, and unsuccessfully tried to speak with him. *Id.* ¶ 46. Officer Woods appeared distressed and avoided Plaintiff. *Id.* An investigative news reporter, Stacie Wirmel of KTAB, observed the encounter, became curious, and stopped Plaintiff in the parking lot so that she could ask him about what had happened. *Id.* ¶¶ 46-47. During this interview, Plaintiff provided truthful information about the events at his apartment on September 4, 2015. *Id.* ¶¶ 48, 50. Later that day, Officer Woods called Plaintiff and told him in a threatening manner that "you didn't see me at the police department today." *Id.* ¶ 49. During that conversation, Officer Woods agreed that there was a forced entry at Plaintiff's apartment and also stated that the report says that too. *Id.*

On or about October 13, 2015, KTAB televised a news story about what had happened to Plaintiff. *Id.* ¶ 50. That same day, Wirmel also published the story online in text. *Id.* She reported that the Police Department had indicated that Plaintiff was "cleared" and that there was no evidence to link him to misconduct. *Id.* She further reported that the Police Department said there was no arrest report and that Plaintiff had merely been taken into custody for questioning. *Id.* During her investigation, Wirmel had interviewed members of the Abilene Police Department, including the Chief of Police. *Id.*

The Police Department did not like the news report and Defendant Wilson tried to "kill" the story before it aired by pressuring and intimidating Plaintiff. *Id.* ¶¶ 50-52. Wilson wanted Plaintiff

to return to the police station to "clear things up" and threatened that criminal charges would be brought if Plaintiff did not cooperate. *Id.* ¶ 52. Plaintiff did not return to the station, but on the day of the news story, Wirmel came to his apartment to complete his interview for her story. *Id.*

On or about October 27, 2015, a criminal indictment charged Plaintiff with a crime that he did not commit and that defendants knew that he had not committed. *Id.* ¶ 54. The indictment resulted from an affidavit signed by Defendant Tatum that was factually incorrect and statements or representations by Defendants Woods and Wilson that were unfairly accusatorial, misleading, and factually incorrect. *Id.* Plaintiff was intentionally and falsely charged with a crime and prosecuted in retaliation for his truthful interview to the news reporter. *Id.* Following the indictment, Defendant Wilson publically arrested Plaintiff at his job. *Id.* ¶ 55. Wilson handcuffed Plaintiff in front of his co-workers, put him in the squad car, and transported him to jail where Plaintiff was booked, photographed, and detained in a jail cell. *Id.* Although he did not consent to being falsely charged and arrested, he did not resist arrest or misbehave. *Id.*

Plaintiff was released on bond and retained an attorney to defend against the improper and false charges. *Id.* Ultimately, the District Attorney moved to dismiss the criminal case. *Id.* ¶ 56. There was no finding of guilt or guilty plea. *Id.* When the District Attorney moved for dismissal of the charges, he conceded that he lacked evidence to prove Plaintiff to be guilty of a crime. *Id.* The criminal court dismissed the case in early December 2015. *Id.*

Prior to filing this action, Plaintiff asked the City whether the individual defendants had violated its policies and its response indicates that they did not. *Id.* ¶ 19. The amended complaint does not identify who Plaintiff asked or who responded. *See id.* The City has taken the position that none of its officers or detectives did anything wrong or violated any City policy or procedure in

connection to the events leading to this litigation. *Id.* ¶ 57.

Plaintiff sues Officer Woods for (a) the unconstitutional misconduct on September 4, 2015, when he improperly and violently invaded his home, took him to the ground, and handcuffed him; (b) the unconstitutional detention and arrest that occurred on that date; and (c) intentionally or recklessly providing incorrect or false information for an affidavit used to secure his unlawful arrest on October 26, 2015, in retaliation for the news story published on October 13, 2015, and to cover up his and his colleagues misconduct. *Id.* ¶ 59(a)-(c). He sues Detective Wilson for (a) similar acts of retaliation and cover up and (b) unlawfully arresting him on October 27, 2015. *Id.* ¶ 60(a)-(b). Likewise, he sues Detective Tatum for similar acts of retaliation and cover up. *Id.* ¶ 61. He alleges that each of these acts violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution and that the retaliation also violated his First Amendment rights. *Id.* ¶¶ 59-61. He sues the City under a municipal-liability theory because of the City's position that its policies and procedures permitted the improper misconduct of the individual defendants and the City's ratification of the unconstitutional misconduct. *Id.* ¶ 62.

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), each of the defendants, other than Detective Tatum, seek dismissal of the claims against them. They seek to dismiss Plaintiff's request for declaratory relief for lack of jurisdiction due to Plaintiff's lack of standing. They seek to dismiss the claims asserted against them for Plaintiff's failure to state a claim upon which relief can be granted. Plaintiff has responded to each motion. *See* Pl.'s First Am. Resp. City's Mot. (doc. 33); Pl.'s Resp. Wilson Mot. (doc. 34); Pl.'s First Am. Resp. Woods Mot. (doc. 32). Each movant has filed a reply brief. *See* City's Reply (doc. 35); Woods Reply (doc. 36); Wilson Reply (doc. 37). The motions are ripe for ruling.

## II. PRELIMINARY MATTERS

Both sides raise or address procedural matters that warrant brief clarification. First, N.D. Tex. L.R. 7.1 does not require a conference before filing a motion to dismiss. Second, no rule of procedure requires any defendant to obtain leave of court before filing a motion to dismiss. Once Plaintiff invoked the procedure for amending his complaint under Fed. R. Civ. P. 15(a), each defendant had at least fourteen days to respond to the amended pleading unless the court otherwise ordered. The Court has not otherwise ordered and Fed. R. Civ. P. 12(b) permits defendants to move to dismiss an amended pleading and does not require any leave of court to do so. Arguments contrary to these procedural clarifications are misplaced. Given these clarifications, the Court should find no basis to strike or unfile any of the motions to dismiss as requested by Plaintiff, *see* Pl.'s First Am. Resp. City's Mot. at 2-3; Pl.'s Resp. Wilson Mot. at 2; Pl.'s First Am. Resp. Woods Mot. at 2.

## III. JURISDICTION

Pursuant to Fed. R. Civ. P. 12(b)(1), each movant seeks to dismiss Plaintiff's request for declaratory relief for lack of subject matter jurisdiction because Plaintiff lacks standing to pursue such relief. Plaintiff disagrees and it appears from the briefing that the opposing positions are largely due to nuances about standing and the invocation of Rule 12(b)(1).

By invoking Rule 12(b)(1), movants seek "dismissal for lack of constitutional standing," rather than "dismissal for lack of prudential or statutory standing"[3] that arises under Rule 12(b)(6). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). "Federal courts

---

[3]The Supreme Court has subsequently characterized the label of "prudential standing" as "misleading." *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). That same case questioned the label of "statutory standing" and found it misleading because it does not implicate subject matter jurisdiction. *Id.* at 1387 n.4. This recommendation will at times utilize those labels as used in prior precedent but with full understanding of their nuances, including that they differ from Article III or constitutional standing that implicates the subject matter of this Court.

are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

Courts may dismiss for lack of subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009) (same). "The Fifth Circuit distinguishes between a 'facial' attack and a 'factual' attack upon a complaint under Rule 12(b)(1)." *Murray v. TXU Corp.*, 279 F. Supp. 2d 799, 801 (N.D. Tex. 2003) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992

8

F. Supp. 876, 878 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000); *accord Anderson Energy Grp. (Ohio), LLC v. Endeavor Ohio, LLC*, No. 3:13-CV-1784-P, 2014 WL 12580470, at *4 (N.D. Tex. Mar. 26, 2014). If the movant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. Regardless of the attack, "[t]he plaintiff constantly bears the burden of proof that jurisdiction does exist." *Rodriguez*, 992 F. Supp. at 879 ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.").

To aid the courts in making their jurisdictional determinations, Fed. R. Civ. P. 8(a) requires plaintiffs to make a "short and plain statement of the grounds upon which the court's jurisdiction depends." Plaintiff asserts that this action arises under 42 U.S.C. § 1983 and the Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201-02. Am. Compl. ¶ 8.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). In pertinent part, it provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). From "its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. "The fact that a court *can* enter a declaratory judgment does

not mean that it *should*." *Hewitt v. Helms*, 482 U.S. 755, 762 (1987).

The Declaratory Judgment Act, furthermore, provides no independent basis for jurisdiction. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). In upholding the constitutionality of the Act, the Supreme Court recognized that "the operation of the Declaratory Judgment Act is procedural only" and Congress was "acting within its delegated power over the jurisdiction of the federal courts which the Congress is authorized to establish," when it "provid[es] remedies and defin[es] procedure in relation to cases and controversies in the constitutional sense." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937). Nevertheless, § 1331 in conjunction with § 1983 typically provides a sufficient jurisdictional basis and § 1343(3) is the "jurisdictional counterpart to § 1983." *Dennis v. Higgins*, 498 U.S. 439, 445 n.5 (1991).

No movant challenges these general propositions and there appears to be no dispute that Plaintiff correctly alleges a proper basis for subject matter jurisdiction over the amended complaint in general. Movants instead contend that the Court lacks jurisdiction over a specific requested remedy. More specifically, each movant seeks to dismiss Plaintiff's claims for declaratory relief for lack of standing pursuant to Rule 12(b)(1) even though Plaintiff properly invokes § 1331 and § 1343 for his claims arising under § 1983. Because courts have an "independent obligation to assure" that jurisdiction is properly invoked, the Court should "examine the constitutional dimension of standing." *Harold H. Huggins Realty, Inc.*, 634 F.3d at 795 n.2. By not supporting their motions to dismiss with evidence outside the governing complaint the movants' jurisdictional challenge is merely a facial attack on jurisdiction. Therefore, the Court need only examine the allegations of the amended complaint to decide whether Plaintiff correctly alleged a basis for subject matter juris-

10

diction.

"Generalizations about standing to sue are largely worthless as such." *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 151 (1970). The one necessary generalization, however, "is that the question of standing in the federal courts is to be considered in the framework of Article III which restricts judicial power to 'cases' and 'controversies.'" *Id.* Article III of the Constitution establishes a "threshold requirement . . . that those who seek to invoke the power of federal courts must allege an actual case or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974). "The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit, although that inquiry 'often turns on the nature and source of the claim asserted.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted and quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). Nevertheless, "*Aetna* and the cases following it do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "The actual controversy required under 28 U.S.C. § 2201(a) is identical to the meaning of case or controversy for the purposes of Article III." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citation and internal quotation marks omitted); *accord MedImmune, Inc.*, 549 U.S. at 127 (recognizing that the actual controversy requirement of § 2201(a) "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III").

To resolve ambiguity with respect to whether features of standing are required by Article III rather than being judicially self-imposed limits on the exercise of federal jurisdiction, the Supreme Court has set out the "irreducible constitutional minimum" requirements of Article III standing. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471-72 (1982). Three elements comprise these minimum requirements: "The plaintiff

11

must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) *as revised* (May 24, 2016); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Quoting *Allen v. Wright*, 468 U.S. 737 (1984),[4] some cases characterize the third element as "likely to be redressed by the requested relief." *See, e.g., Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 678 (2016), as revised (Feb. 9, 2016) (Roberts, C.J., dissenting); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, ___, 133 S. Ct. 721, 726 (2013); *Raines*, 521 U.S. at 818.

For cases "at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc.*, 136 S. Ct. at 1547 (quoting *Warth*, 422 U.S. at 518). At that stage of litigation, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561. Furthermore, it is "established jurisprudence that the failure of a cause of action does not automatically produce a failure of jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998).

When considered as a whole, Plaintiff's amended complaint in this case satisfies the constitutional standing requirements. Plaintiff has alleged injuries that are fairly traceable to the conduct of defendants and are likely to be redressed by a favorable decision. To the extent there is any issue that the alleged injuries are fairly traceable to the City, such issue relates to whether Plaintiff has stated a claim for municipal liability, not whether Plaintiff has standing to sue the City. Plaintiff,

---

[4]The Supreme Court abrogated *Allen* on other grounds in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).

furthermore, does not seek a declaratory judgment in isolation. He instead seeks both monetary and declaratory relief against each defendant. A claim for monetary damages satisfies the third element. *Id.* at 96. Under this global view of the amended complaint, this case presents a case and controversy presented through the request for monetary damages regardless of the claims for declaratory relief. If that ended the analysis, constitutional standing would be present, the Court would have subject matter jurisdiction, and the Court should deny the motions to the extent movants seek a jurisdictional dismissal of the claims for declaratory relief under Fed. R. Civ. P. 12(b)(1).

However, the Supreme Court has long required the courts to examine standing separately for each form of relief sought, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 105-11 (1983) (5-4 decision), and has stated that the plaintiff "bears the burden of showing that he has standing for each type of relief sought," *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *Lyons*). Under this precedent, the fact that a plaintiff has a monetary damage claim does nothing to establish standing for a different form of relief. *See Lyons*, 461 U.S. at 105. Given the requirement to separately consider standing for each form of relief sought, the third element of the "irreducible constitutional minimum" requirements of Article III standing effectively mandates that the plaintiff's injury be redressable by the specific form of requested relief. *See, e.g., Already, LLC*, 568 U.S. at ___, 133 S. Ct. at 726; *Raines*, 521 U.S. at 818. The plaintiff must have a personal stake for each requested form of relief and the absence of a personal stake for a particular form of relief results in a lack of constitutional standing over that form of relief for that case.

Movants argue that the Court lacks jurisdiction to issue declaratory relief to Plaintiff because there is no real and immediate threat of future injury such that there is a current case or controversy as to such relief. While addressing the issue of case or controversy in the context of injunctive relief,

13

the Supreme Court has held that there is no "present case or controversy regarding injunctive relief," merely from "[p]ast exposure to illegal conduct," but "continuing, present adverse effects" provide a sufficient case or controversy for purposes of injunctive relief.  *O'Shea*, 414 U.S. at 495-96. Although there is ample precedent for treating declaratory and injunctive relief differently, *see, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459-75 (1974), in *Lyons* the Supreme Court applied an "analogous" declaratory judgment case, *Golden v. Zwickler*, 394 U.S. 103 (1969), as support for holding that there was no case or controversy for injunctive relief, *see* 461 U.S. at 104.

Similarly, the Fifth Circuit has held that "to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).  The Fifth Circuit has also held that in "the context of prospective injunctive and declaratory relief, past exposure to illegal conduct, by itself, does not evince a present case or controversy and thus cannot establish standing." *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015).  When the plaintiff lacks "standing to pursue prospective injunctive relief," it is not appropriate for the courts to grant declaratory relief without an "ongoing injury" or a "threat of future injury" that is either "imminent or likely." *Id.* (quoting *Bauer*, 341 F.3d at 358).

Plaintiff does not allege any ongoing injury or any threat of a likely or imminent future injury. In fact, he alleges that he has moved out of state, Am. Compl. ¶ 3, thus eliminating any realistic possibility of any threat of future injuries.  If Plaintiff sought prospective relief, he would lack constitutional standing based on the above case law.  However, there is simply nothing prospective about Plaintiff's request for declaratory relief in this case.  *See* Am. Compl. ¶ 63.  Plaintiff instead

14

seeks a declaration that at the time of the events (a) he "had a legally recognized and well-known right to freedom of expression, including the free speech right to speak to news reporters which was guaranteed by the First Amendment"; (b) each of the defendants violated his First Amendment rights; (c) he "had a legally recognized and well-known right to be free from unreasonable seizure and/or arrest and/or prosecution which was guaranteed by the Fourth Amendment"; and (d) each of the defendants violated his Fourth Amendment rights. *Id.* Plaintiff's requested declaratory relief thus differs in material ways from cases involving prospective relief.

No party addresses whether this distinction is sufficient to warrant a different outcome with respect to Article III standing. A noted commentator has stated, however, that "[t]here is little difficulty in finding an actual controversy if all of the acts that are alleged to create liability already have occurred," because the courts are "merely being asked, as in any litigation, to determine the legal consequences of past events." 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2757 (4th ed.2014). Further, the Supreme Court noted long ago:

> The difference between an abstract question and a "controversy"contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

More recently, when addressing the redressability component of constitutional standing in *Steel Co.*, the Supreme Court summarily disposed of a requested declaration that the petitioner had violated a particular statute as "worthless" to the respondent, not because of the absence of a real and immediate threat of future injury, but because there was simply no dispute that the petitioner had

violated that statute. *See* 523 U.S. at 106. Later in that same decision, the Supreme Court found that a request for prospective injunctive relief provided no basis to satisfy the redressability component for Article III standing because the injunction could not "conceivably remedy any past wrong." *Id.* at 108. In the constitutional standing context, it thus appears that the Supreme Court considers a request for retrospective declaratory relief differently than a request for prospective injunctive relief. The parties here certainly dispute whether defendants have violated Plaintiff's constitutional rights. Unlike the situation in *Steel Co.*, Plaintiff has provided sufficient factual allegations at this juncture so as to not find the requested declaratory relief "worthless" to him in that sense.

Furthermore, movants rely on a number of cases for the proposition that it is within the discretion of the district court to determine whether or when to entertain a request for declaratory judgment and simply because the court can issue such a judgment does not mean that it should do so. *See* City's Mot. at 8-9; Wilson Mot. at 20-21; Woods Mot. 21-22. But when the Supreme Court discusses whether a court should enter a declaratory judgment, *see Hewitt v. Helms*, 482 U.S. 755, 762 (1987), or when other courts state that "a declaratory judgment should be declined when it would serve only as a statement of law without any practical enforcement effect," *see In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d 85, 118 (D.D.C. 2007) (citing *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch., Inc.*, 24 F.3d 427, 431 (2d Cir. 1994)), *aff'd sub nom. Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011), those cases are addressing the discretionary nature of obtaining a declaratory judgment, not whether the plaintiff has standing to seek a requested declaratory judgment. Discretion is irrelevant to Article III or constitutional standing. It may be relevant, however, to prudential factors that may counsel against exercising jurisdiction even when the Article III requirements are met. *See United States v. Windsor*, 133 S. Ct. 2675, 2686-87 (2013).

16

At this juncture and based on the allegations of the amended complaint, the Court should not dismiss Plaintiff's claims for declaratory relief for lack of constitutional standing and should deny the motions to dismiss to the extent they seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1). Because the arguments of the movants also rely on the Court's discretion, the Court should consider whether prudential concerns are sufficient to not exercise jurisdiction to issue the requested declaratory relief.

## IV. PRUDENTIAL LIMITS ON EXERCISING JURISDICTION

Although movants invoke Rule 12(b)(1) and seek dismissal for lack of jurisdiction, it appears that they also invoke the prudential limits on the exercise of the Court's jurisdiction.

> These judicially created limits concern whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999). Whether an asserted grievance falls within the protected zone of interests "raises the issue of statutory standing." *United States v. Miller*, No. 5:02-CV-0168-C, 2003 WL 23109906, at *6 (N.D. Tex. Dec. 22, 2003). When the constitutional minimum requirements for Article III standing are satisfied, whether a plaintiff has standing to obtain declaratory relief under the Declaratory Judgment Act is an issue of prudential or statutory standing. Statutory standing issues have "nothing to do with whether there is a case or controversy under Article III." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998).

Litigants and others often overlook the distinction between the minimum constitutional re-

quirements and these prudential limits, but they are distinct and separate strands of standing. *See United States v. Windsor*, 133 S. Ct. 2675, 2685 (2013). Long ago, the Supreme Court recognized that the standing inquiry "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). These prudential limitations restrict "the class of persons who may invoke the court's decisional and remedial powers." *Id.* at 499. These limitations are "essentially matters of self-governance" to avoid certain abstract questions when "judicial intervention may be unnecessary to protect individual rights." *Id.* at 500. As stated in *Warth*:

> the source of the plaintiff's claim to relief assumes critical importance with respect to the prudential rules of standing that, apart from Art. III's minimum requirements, serve to limit the role of the courts in resolving public disputes. Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.

*Id.*

"Even when Article III permits the exercise of federal jurisdiction, prudential considerations" may demand that the courts not exercise such jurisdiction. *Windsor*, 133 S. Ct. at 2687. On the other hand, however, in rare circumstances, there may be "reasons to hear a case and issue a ruling" despite the presence of prudential concerns. *Id.* While Article III's requirements "must be satisfied by the parties before judicial consideration is appropriate," other considerations in a given case may outweigh "relevant prudential factors that counsel against" exercising federal jurisdiction. *Id.* (citing *Warth*, 422 U.S. at 500-01).

As discussed in the prior section, Plaintiff merely seeks retrospective declarations based entirely on past acts. Such retrospective declarations appear proper under 28 U.S.C. § 2201(a). The

operative complaint does not raise abstract questions or a generalized grievance more properly addressed by the legislative branch. Plaintiff, furthermore, asserts his own legal rights and interests. This case presents no issue regarding third-party interests. Accordingly, the Court should find no prudential concerns that would invoke its discretion not to exercise its Article III jurisdiction over Plaintiff's claims for declaratory relief.[5]

## V. FAILURE TO STATE A CLAIM

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides a means to dismiss asserted claims for "failure to state a claim for which relief can be granted." Every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When ruling on a Rule 12(b)(6) motion, courts generally examine only the contents of the pleadings and any attachments thereto. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). However, they "may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Id.* Furthermore, the courts accept all well-pleaded facts as

---

[5]Because movants seek dismissal of the claims for declaratory relief only on jurisdictional grounds, which at least arguably includes the prudential concerns addressed in this recommendation, their motions provide no basis for the Court to consider whether the requested declaratory relief is subject to dismissal for failure to add anything to the suit not already covered by the request for monetary relief. *See, e.g., Merritt Hawkins & Assocs., LLC v. Gresham*, No. 3:13-CV-0312-P, 2014 WL 685557, at *3 (N.D. Tex. Feb. 21, 2014) (addressing declaratory relief that merely duplicated matters already pending before the court); *Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*, No. 3:07-CV-1779-B, 2008 WL 2434245, at *2 (N.D. Tex. June 17, 2008) (recognizing that courts need not permit repetitive and unnecessary declaratory relief); *Xtria LLC v. Tracking Sys., Inc.*, No. 3:07-CV-0160-D, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (dismissing declaratory judgment relief under Rule 12(b)(6) because it duplicated breach of contract claim).

true and view them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). In addition, they "draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). A plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated succinctly, to survive dismissal under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). The alleged facts must "nudge" an asserted claim "across the line from conceivable to plausible" to avoid dismissal under Rule 12(b)(6). *Twombly*, 550 U.S. at 570. Courts do not focus on whether the non-movant will ultimately prevail; they instead focus on whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United

20

States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). To survive a motion to dismiss a § 1983 claim for alleged deprivation of constitutional rights, the plaintiff must allege that (1) a state actor, i.e., a person or entity acting under color of state law, (2) deprived the plaintiff of a federal constitutional right. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867-69 (5th Cir. 2012) (en banc).

A plaintiff, moreover, may hold a municipality or local government entity liable under § 1983 "only for acts for which it is actually responsible." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (1998); *accord Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). Municipal liability does not attach merely on a theory of respondeat superior or because an employee committed a tort. *Pembaur*, 475 U.S. at 479. Requiring a plaintiff to identify a policy or custom that caused his or her injury "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997).

### 1. **Official-Capacity Claims**

Plaintiff sues Wilson and Woods in their official capacity. Am. Compl. at 2 n.3. An official-capacity suit is generally simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). When the entity has received notice and has had an opportunity to respond, official-capacity suits are "to be treated as a suit against the entity." *Id.* at 166. Moreover, when plaintiffs bring suit against both the entity and individuals in their official capacity under the same set of facts, the courts properly dismiss the official-capacity claims

21

as duplicative. *Castro Romero v. Becken*, 256 F.3d 349, 255 (5th Cir. 2001).

In this case, Plaintiff's official-capacity claims against Wilson and Woods merely duplicate his claims against the City. Consequently, the Court should dismiss the official-capacity claims against Defendants Wilson and Woods. Contrary to assertions by Plaintiff, *see* Pl.'s Resp. Wilson Mot. at 17-18; Pl.'s First Am. Resp. Woods Mot. at 16-18, such dismissal does not affect the viability of his individual-capacity claims against those defendants.

### 2. Individual-Capacity Claims

Plaintiff seek to hold Defendants Wilson and Woods individually liable for alleged violations of the First, Fourth, and Fourteenth Amendments. Am. Compl. ¶¶ 59-60. Based upon the events of September 4, 2015, he sues Woods for violations of his Fourth and Fourteenth Amendment rights. *Id.* ¶ 59(a)-(b). Based upon subsequent events, including intentionally or recklessly providing incorrect or false information used to secure his unlawful arrest on October 26, 2015, in retaliation for the news story published on October 13, 2015, or to cover up misconduct, he also sues Woods for violations of his First, Fourth, and Fourteenth Amendment rights. *Id.* ¶ 59(c). He sues Wilson for (a) similar acts of retaliation and cover up and (b) unlawfully arresting him on October 27, 2015. *Id.* ¶ 60(a)-(b).

The individual defendants argue that they are entitled to qualified immunity. Wilson Mot. at 11-13; Woods Mot. at 11-13. That defense "shields a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known." *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007); *accord Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Qualified immunity recognizes that government officials may

22

"make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citation and internal quotation marks omitted).

Plaintiff argues that the failure of Wilson and Woods to file an answer that affirmatively asserts their qualified immunity defense makes the defense unavailable to them at this time. *See* Pl.'s Resp. Wilson Mot. at 3-4,13-14; Pl.'s First Am. Resp. Woods Mot. at 3-4, 13-14. Citing Fed. R. Civ. P. 8(c); *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); and *Gomez v. Toledo*, 446 U.S. 635, 640 (1980), Plaintiff contends that an affirmative defense must be pled in an answer to the complaint. Pl.'s Resp. Wilson Mot. at 13; Pl.'s First Am. Resp. Woods Mot. at 13. Relying on Rule 8(c), *Gomez* held that the defendant has the burden to plead the defense. 446 U.S. at 640. Relying on *Gomez*, *Siegert* in turn stated that "[q]ualified immunity is a defense that must be pleaded by a defendant." 500 U.S. at 231.

The Court should have no quarrel with any of these propositions, but even though Rule 8(c) requires that all affirmative defenses be pled in the responsive pleading, that requirement does not of itself preclude a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Rule 12(b) unambiguously permits a party to assert certain defenses by motion and it requires that "motions asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Nothing in Rule 8(c), *Gomez*, or *Siegert* supplants the procedure permitted by Rule 12(b). The federal courts construe, administer, and employ the Federal Rules of Civil Procedure "to secure, the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Consequently, Rule 8(c) applies when a defendant files an answer and does not preclude assertion of a defense in a motion to dismiss filed pursuant to Rule 12(b)(6). The filing of a motion under Rule 12 alters the deadline

23

to serve a responsive pleading. *See* Fed. R. Civ. P. 12(a)(4).

Nevertheless, a motion under Fed. R. Civ. P. 12(b)(6) is certainly a poor vehicle for resolving claims of qualified immunity. *See Thomas v. City of Desoto*, No. 3:02-CV-0480-H, 2002 WL 1477392, at *1 n.1 (N.D. Tex. July 8, 2002) (accepting recommendation of Mag. J.). "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal." *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) (cited with approval in *Thomas*). Plaintiffs simply do not need to "anticipate the immunity defense" when filing their complaint. *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998); *accord Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc) (holding that plaintiffs are not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12").

"The preferred procedure is an answer raising the affirmative defense of qualified immunity followed by a reply under Rule 7(a) of the Federal Rules of Civil Procedure." *Thomas*, 2002 WL 1477392, at *1 n.1 (citing *Schultea*, 47 F.3d at 1433-34). In *Crawford-El*, the Supreme Court recognized a similar procedure while also noting the option for a defendant to seek a more definite statement under Rule 12(e). *See* 523 U.S. at 598-99. Of course, once a party files an answer, Rule 12(b)(6) becomes unavailable to that party. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a response pleading is allowed."). Thus, after an answer and Rule 7(a) reply, if any, the general procedure is to present the qualified immunity defense in a motion for judgment on the pleadings under Rule 12(c) or through a motion for summary judgment under Rule 56. *Thomas*, 2002 WL 1477392, at *1 n.1. While a Rule 12(c) motion for judgment on the pleadings presents many of the same problems as Rule 12(b)(6) for determining claims of immunity, the court and parties have the benefit of greater factual detail through a Rule

24

7(a) reply, if necessary. Nevertheless, for many cases, it is difficult to disagree with the sentiment that "summary judgment is the right way to handle claims of immunity." *Jacobs*, 215 F.3d at 775 (Easterbrook, J., concurring).

After *Schultea*, the Northern District of Texas has questioned "whether a Rule 12(b)(6) motion is the proper vehicle for resolving a claim of qualified immunity," *Thomas*, 2002 WL 1477392, at *1 n.1; has specifically stated that *Schultea* "requires a defendant to assert such immunity via the filing of an answer," *Johnson v. Anderson*, No. 4:03-CV-1355-Y, 2004 WL 1908212, at *1 (N.D. Tex. Aug. 2004); and has stated "that a Rule 12(b)(6) motion to dismiss on the ground of qualified immunity is no longer viable," *Kremelberg v. Keeling*, No. 3:15-CV-3695-K-BH, 2016 WL 7744408, at *4 (N.D. Tex. Dec. 12, 2016) (recommendation of Mag. J. quoting *Johnson*, 2004 WL 1908212, at *1 n.1), *accepted by* 2017 WL 131822 (N.D. Tex. Jan. 12, 2017). Although there are certainly practical concerns sufficient to question the wisdom of raising qualified immunity in the context of a Rule 12(b)(6) motion, there is no legitimate basis for interpreting *Schultea* as precluding use of that device in all circumstances. As this Court has previously recognized: "Some courts have allowed defendants to assert the defense for the first time in a motion to dismiss. However, this Court's preferred practice is to have a defendant raise the affirmative defense by pleading it in the defendant's answer." *Cass v. City of Abilene*, No. 1:13-CV-177-C, 2014 WL 12642539, at *4 (N.D. Tex. Feb. 25, 2014).

There is no reason to recognize an absolute bar to raising qualified immunity in a Rule 12(b)(6) motion to dismiss. As already discussed, such bar is not dictated by Rule 8(c), *Siegert*, or *Gomez*. Furthermore, even though plaintiffs need not anticipate defenses in their complaints, nothing precludes them from doing so and including sufficient facts to resolve qualified immunity

25

issues even through a Rule 12(b)(6) motion to dismiss. The *Johnson* court, moreover, merely stated that "it appears" that a Rule 12(b)(6) is no longer viable after *Schultea*. *See* 2004 WL 1908212, at *1 n.1. Subsequent to *Schultea*, however, the Fifth Circuit has had multiple opportunities to consider qualified immunity in the context of a Rule 12(b)(6) motion to dismiss and has expressed no prohibition on use of that vehicle to present the matter for ruling. *See, e.g., Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (entertaining "an interlocutory appeal from the district court's denial of a motion to dismiss on qualified immunity); *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (addressing motion to dismiss filed immediately after complaint and then a second motion to dismiss filed after the filing of an amended complaint); *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008) (addressing motion to dismiss, supplemented by a court-ordered Rule 7(a) reply submitted in accordance with *Schultea*); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251 (5th Cir. 2005) (addressing multiple motions to dismiss filed under Fed. R. Civ. P. 12(b)(6)); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) while explaining that issues of qualified immunity "will be different on summary judgment than on an earlier motion to dismiss").[6] As noted in *McClendon*, the Supreme Court has also discussed qualified immunity in the motion-to-dismiss context. *See Behrens*, 516 U.S. at 307 (discussing appeals from denials of qualified immunity "at the motion-to-dismiss stage").

Late last year, moreover, the Fifth Circuit specifically recognized that defendants may assert

---

[6]While not all of the cited cases specify that the addressed motion to dismiss arose under Rule 12(b)(6), it appears that the ones which generically speak in terms of motions to dismiss are referring to motions filed under Rule 12(b)(6) rather than Rule 12(c). Unless mislabeled, Rule 12(c) motions are characterized as motions for judgment on the pleadings, not as motions to dismiss.

a qualified immunity defense in a motion to dismiss. *See Anderson v. Valdez*, 845 F.3d 580, 589-90 (5th Cir. 2016) (stating that, as explained in *Schultea*, when "a qualified immunity defense is asserted in an answer or motion to dismiss," the court must first determine whether the complaint satisfies the requirements of Rule 8(a) before determining whether in its discretion, it should insist that the plaintiff file a Rule 7(a) reply); *Randle v. Lockwood*, 666 F. App'x 333, 336-37 (5th Cir. 2016) (per curiam) (remanding case because court had not addressed the qualified immunity defense asserted in a motion to dismiss). *Anderson* has definitively squelched any argument that *Schultea* may prohibit the assertion of qualified immunity in a Rule 12(b)(6) motion to dismiss.

While there is no basis for an absolute bar to asserting qualified immunity in a Rule 12(b)(6) motion to dismiss, *Johnson* and the cases following it, provide support for finding that courts have discretion to dismiss Rule 12(b)(6) motions without prejudice to the defendant asserting the defense in a later motion filed pursuant to Fed. R. Civ. P. 12(c) or 56. Such discretion allows the courts to balance the particular circumstances of a given case to determine the best means of resolving qualified immunity issues. In light of the recent *Anderson* decision, that discretion should be limited to when the Court's review reveals that a Rule 7(a) reply is warranted. *See* 845 F.3d at 589-90. In *Randle*, furthermore, the Fifth Circuit specifically noted that the court's discretion to defer ruling on qualified immunity when "further factual development is necessary" is a "narrow exception to the general rule that qualified immunity should be decided as early in the litigation as possible." *Randle*, 666 F. App'x at 337 n.6. If the court concludes that additional factual detail is warranted with respect to the qualified immunity defense, summary denial of the motion to dismiss is an option well-within the court's discretion. *Anderson*, however, also presents another option, i.e., insist that the plaintiff file a Rule 7(a) reply tailored to the motion to dismiss. *See id.*

27

Although most cases should follow the typical sequence of an answer, followed by a Rule 7(a) reply if necessary, and a Rule 12(c) or Rule 56 motion, the particulars of a case permit proper resolution of the qualified immunity issues through a Rule 12(b)(6) motion. Just as plaintiffs are the master of their complaints, defendants are the master of their chosen response within the bounds of the procedural rules. "Of course, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

Regardless of the procedural vehicle used, asserting the defense commences an established "procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). The assertion first prompts the courts to determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Id.* (quoting *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)). This means that "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* Once "the district court finds a plaintiff has so pled" and "if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987)). Because the Rule 12(b)(6) context requires the courts to only review the factual allegations within the operative complaint, a discovery order is generally unnecessary to rule on the immunity defense.

28

In this case, Wilson and Woods filed motions to dismiss asserting qualified immunity, *see* Docs. 16 and 19, that prompted Plaintiff to file an amended complaint with additional factual detail. Additional facts in an amended complaint may negate the need for a Rule 7(a) reply. Because the lack of an answer does not prevent them from raising their qualified immunity defense through their motions to dismiss and because, in this case, the Court has sufficient factual allegations to make a ruling on the qualified immunity defense asserted in the most recent motions to dismiss filed by Woods and Wilson, the Court should consider the qualified immunity defense as asserted in the motions to dismiss. Given the facts alleged by Plaintiff, there appears to be no need to defer ruling on the qualified immunity defense until Wilson and Woods assert it in an answer. In any event, as recognized in *Johnson*, even if the Court chooses to defer ruling on qualified immunity by summarily denying the motions to dismiss without prejudice to the extent they rely on qualified immunity, it properly considers the motions to dismiss to the extent the defendants seek dismissal on grounds other than qualified immunity. *See* 2004 WL 1908212, at *1 n.1.

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012). To satisfy that burden on a motion to dismiss, plaintiffs must claim that a defendant violated their constitutional rights and that the violation was objectively unreasonable. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). When addressing a motion to dismiss, the courts scrutinize the conduct of the defendants as alleged in the complaint for objective legal reasonableness. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

To decide whether a defendant is protected by qualified immunity, the courts conduct a two-prong inquiry. Under the first prong, courts consider whether the facts alleged, taken in the light

29

most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case.  *Id.* at 201.  This does not mean that the very conduct in question has been previously held unconstitutional. *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009).  There need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

The Supreme Court has repeatedly instructed the courts "to not define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 742). The pertinent "inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable" governmental actor that the conduct was unlawful in the situation confronted. *Saucier*, 533 U.S. at 202. "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established'" and the courts must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (citations and internal quotations marks omitted).

It is within the discretion of the courts to decide which of the two prongs to address first in light of the circumstances particular to each case. *Pearson*, 555 U.S. at 236; *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle'. . . is now advisory."). If the court answers both the constitutional violation and clearly established questions in the affirmative, the governmental actor is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

### a. *Claims under Fourteenth Amendment*

Although Plaintiff mentions the Fourteenth Amendment in his amended complaint, *see* Am.

Compl. ¶¶ 1, 8, 16-18, 29, 31-33, 59-61, 66-69, and Wilson and Woods address that amendment in their briefing, *see* Wilson Mot. at 15; Woods Mot. at 18-19, the Court should find that Plaintiff asserts no separate and distinct Fourteenth Amendment violation. As clarified in briefing on the motions, Plaintiff invokes the Fourteenth Amendment merely because that amendment makes the substantive constitutional violations under the First and Fourth Amendments applicable to the states through their incorporation into the Fourteenth Amendment. *See* Pl.'s Resp. Wilson Mot. at 14; Pl.'s First Am. Resp. Woods Mot. at 14.

Courts have long recognized such incorporation. *See Augustine v. Doe*, 740 F.2d 322, 325 (5th Cir. 1984) (noting substantive proscriptions of the Fourth Amendment made "applicable to the states because of incorporation into the due process clause of the fourteenth amendment"); *Catholic Leadership Coal. v. Reisman*, 764 F.3d 409, 414 n.1 (5th Cir. 2014) (noting that First Amendment is incorporated against the states through the Fourteenth Amendment) (citing *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 749 n.1 (1976)); *Doe v. Dallas Indep. Sch. Dist.*, 194 F. Supp. 3d 551, 560 n.11 (N.D. Tex. 2016) (noting Fourteenth Amendment incorporates the First Amendment with respect to the states) (citing *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996)). The reference to the Fourteenth Amendment does not alter the substantive analysis under the First or Fourth Amendments. Furthermore, when a party invokes the Fourteenth Amendment because it incorporates other substantive constitutional proscriptions, the courts properly consider the alleged constitutional violations under the more specific right implicated by the allegations. *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 441 (5th Cir. 2015); *Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994).

Because Plaintiff merely references the Fourteenth Amendment in an incorporation respect,

31

the Court should find no reason to dismiss any independent Fourteenth Amendment claims and deny the motions of Wilson and Woods to the extent they seek to dismiss Fourteenth Amendment claims. Consideration of the alleged substantive violations of the First and Fourth Amendments will determine whether Plaintiff has stated a plausible claim against Wilson and Woods.

### b. *Fourth Amendment Claims*

Plaintiff asserts various claims under the Fourth Amendment. *See* Am. Compl. ¶¶ 59-60. Specifically, he sues Officer Woods for (a) "the improper and violent home invasion," damaging his home and personal property, "and violently and roughly laying hands" on him on September 4, 2015; (b) detaining and arresting him on that same date; and (c) intentionally or recklessly providing incorrect or false information to procure his arrest, indictment, and criminal prosecution on known false charges in October 2015. *Id.* ¶ 59(a)-(c). He sues Detective Wilson for (a) similar acts resulting in his arrest, indictment, and criminal prosecution in October 2015 and (b) arresting him on or about October 27, 2015. *Id.* ¶ 60(a)-(b).

Courts evaluate excessive force claims arising "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen" under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Unlawful detention and arrest claims arise under the Fourth Amendment, which is "applicable through the Fourteenth Amendment to the States." *Bailey v. United States*, 568 U.S. 186, ___, 133 S. Ct. 1031, 1037 (2013). A governmental official may also violate the Fourth Amendment by deliberately or recklessly providing false, material information to secure a warrant or indictment. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978) (false statements in warrant affidavit); *Hale v. Fish*, 899 F.2d 390, 400 n.3 (5th Cir. 1990) (material omissions); *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988) (indictment).

The Fourth Amendment protects the "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Trent v. Wade*, 776 F.3d 368, 377 (5th Cir. 2015). Reasonableness is "the ultimate touchstone of the Fourth Amendment." *Fernandez v. California*, 134 S. Ct. 1126, 1132 (2014). Courts, furthermore, measure reasonableness "in objective terms by examining the totality of the circumstances." *Ohio v. Robinette,* 519 U.S. 33, 39 (1996).

### (1) Providing False or Incorrect Information

Plaintiff sues Officer Woods and Detective Wilson for intentionally or recklessly providing incorrect/false information that Detective Tatum incorporated into an affidavit to secure Plaintiff's arrest, indictment, and criminal prosecution in October 2015. Am. Compl. ¶¶ 59(c), 60(a). He alleges that each defendant knew or should have known that he had committed no crime. *Id.*

By providing a false statement in a warrant application intentionally, or with "reckless disregard for the truth," government officials may violate the Fourth Amendment. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978). "Likewise, the intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation." *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006). The same is true when the omission or false statement taints an indictment. *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988). Furthermore, "a deliberate or reckless misstatement may form the basis for a *Franks* claim against a government official who is not the affiant." *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997), *abrogation on other grounds recognized by Spivey v. Robertson*, 197 F.3d 772, 775-76 (5th Cir. 1999). Government officials "cannot insulate one officer's deliberate misstatements merely by relaying it through an officer-affiant personally ignorant of its falsity." *Melton v. Phillips*, 837 F.3d 502, 507 (5th Cir. 2016)

33

(internal quotation marks omitted), *reh'g en banc granted*, No. 15-10604, 2017 WL 629267 (5th Cir. Feb. 15, 2017). In addition, qualified immunity does not protect "officers who maliciously or reck-less[ly] represent or omit material information in presenting information" to procure an arrest warrant or indictment. *Kugle v. Shields*, 62 F.3d 395 (Table), No. 93-5567, 1995 WL 450219, at *4 (5th Cir. July 7, 1995) (citing *Hale v. Fish*, 899 F.2d 390, 399 (5th Cir. 1990); *Hand*, 838 F.2d at 1428).

Plaintiff alleges sufficient facts to find that the indictment leading to his October 2015 arrest was plausibly tainted by factual misrepresentations from Woods and Wilson for an affidavit signed by Detective Tatum. Although Plaintiff has not provided a great amount of factual detail as to the specific misrepresentations, he has alleged that he had committed no crime and that each defendant knew or should have known that fact. That alleged knowledge suffices to survive dismissal at this stage of the litigation.

At the motion to dismiss stage, Plaintiff has asserted sufficient facts to overcome the qualified immunity defense. *See Cunningham v. City of Balch Springs*, No. 3:14-CV-59-L, 2016 WL 235966, at *3 (N.D. Tex. Jan. 20, 2016) (making similar finding on minimal factual allegations at the motion to dismiss stage); *Earnheart v. City of Terrell*, No. 3:04-CV-755-H, 2005 WL 81724, at *4 (N.D. Tex. Jan. 13, 2005) (same). Qualified immunity does not protect either of these individuals for the Fourth Amendment violation based on providing known misinformation for the affidavit. Under the facts alleged in the amended complaint, Plaintiff has stated a plausible Fourth Amendment claim for providing incorrect or false information for the affidavit used to secure his indictment and, at this time, the Court should find that qualified immunity does not shield them from their alleged role in tainting the indictment that led to Plaintiff's arrest in October 2015. Under the facts alleged it was objectively unreasonable for them to provide known false or incorrect

34

information for the Tatum affidavit.

Wilson and Woods argue that the affidavit has a presumption of validity under *Franks*. Wilson Mot. at 16; Woods Mot. at 15. To the extent such presumption applies in the civil context currently before the Court, the facts alleged by Plaintiff, which are presumed to be true for purposes of resolving the motions to dismiss, are sufficient to overcome the presumption.

Wilson also argues that, even if Plaintiff's allegations are true, Plaintiff has failed to show that he was relying on false information or lacked probable cause to arrest or seize him. Wilson Mot. at 17. As will be discussed more in the next section, probable cause depends on the facts and circumstances known to the officer. *See Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009). For purposes of a motion to dismiss, when an officer allegedly knows that the Plaintiff has committed no offense, that officer lacks probable cause to arrest the individual. Some facts underlying immunity are "peculiarly within the knowledge and control of the defendant." *Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir. 1995) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Because information within the affidavit and facts supporting probable cause fall within that knowledge and control, *see id.* at 1432 ("in some cases, such as in search cases, probable cause and exigent circumstances will often turn on facts peculiarly within the knowledge of the defendants"), a plaintiff may have limited facts to allege. When a defendant asserts qualified immunity in a motion to dismiss, the courts initially "do no more than determine whether the plaintiff has" complied with the requirements of Rule 8(a)(2). *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016).

Although Wilson may view Plaintiff's recitation of the facts as dramatic and selective, *see* Wilson Mot. at 18, or that Plaintiff purposefully withheld "the true facts" and included "blatant falsehoods" in his pleading, *see id.* at 21, it is the nature of motions to dismiss to limit consideration

35

to the Plaintiff's factual allegations. While Wilson may disagree with the facts, his motion does not compel Plaintiff to provide any support for his factual allegations. A motion for summary judgment provides a better vehicle to obtain such support and to consider issues like qualified immunity. A motion to dismiss simply falls short in various situations, but that is the procedural vehicle Wilson and Woods chose to present their qualified immunity defense.

Woods and Wilson also urge the Court to dismiss any stand-alone claim asserted for malicious prosecution. Standing alone, a claim for malicious prosecution does not violate the United States Constitution and is not cognizable under 42 U.S.C. § 1983. *See Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812-13 (5th Cir. 2010); *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009); *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (en banc). "Thus, any allegation of malicious prosecution fails to state a claim upon which relief can be granted." *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 640 (N.D. Tex. 2007). However, Plaintiff specifically states in response to the motions that he pursues no claim for malicious prosecution. *See* Pl.'s Resp. Wilson Mot. at 25; Pl.'s First Am. Resp. Woods Mot. at 25. Accordingly, the Court has no need to dismiss such non-asserted claim.

### (2) Search and Seizure

Plaintiff sues Officer Woods for the improper entry into his home, damaging his home and contents, and his detention and arrest on September 4, 2015. Am. Compl. ¶ 59(a)-(b). He sues Detective Wilson for his improper seizure and arrest in October 2015 based upon charges that Wilson knew or should have known to be false. *Id.* ¶ 60(b).

When a government actor restrains the liberty of a citizen "by means of physical force or show of authority," such restraint qualifies as a seizure which triggers Fourth Amendment pro-

36

tections. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). In addition, a "'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *Id.* at 63 (quoting *Jacobsen*, 466 U.S. at 113).

The "circumstances of a search and seizure carried out in a home necessarily include the officer's entry into the home." *Trent v. Wade*, 776 F.3d 368, 378 (5th Cir. 2015). Courts consider "the method of an officer's entry into a dwelling" when "assessing the reasonableness of a search or seizure" and the reasonableness of the method of entry "may depend in part on whether law enforcement officers announced their presence and authority prior to entry." *Wilson v. Arkansas*, 514 U.S. 927, 931, 934 (1995). "The general rule therefore is that an officer must knock and announce his presence and authority prior to entering a home." *Trent*, 776 F.3d at 378. Of course, "[a]s with other aspects of Fourth Amendment law, the knock-and-announce rule is defined by its exceptions." *Id.* In reviewing "the reasonableness of the police decision not to knock and announce in a particular case," the courts must examine the facts and circumstances of a particular entry to determine whether the officers were justified in bypassing the knock-and-announce requirement. *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). To reasonably "justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Id.*

Arrests and other detentions may qualify as seizures under the Fourth Amendment. *Ashcroft*

37

*v. al-Kidd*, 563 U.S. 731, 735 (2011) (arrest); *Peterson v. City of Fort Worth*, 588 F.3d 838, 845 (5th Cir. 2009) (detention). "Warrantless seizures of a person inside his home are 'presumptively unreasonable.'" *United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). An arrest under such circumstances can be justified only by exigent circumstances or consent. *Id.* It is the burden of the officer to show that such a warrantless seizure is justified. *Payton*, 445 U.S. at 586 n.25.

Regardless of the arrest location, an arrest is necessarily unreasonable unless supported by probable cause to believe that the person arrested had committed or was committing an offense. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004). "Probable cause exists where the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009) (citation and internal quotation marks omitted). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983). The arresting officer must have "more than a 'bare suspicion' but less than a preponderance of evidence" that the person arrested had committed an offense. *Watson*, 273 F.3d at 602.

An indictment provides a presumption of probable cause to arrest the person indicted unless Plaintiff shows "that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988). A plaintiff may show such taint by showing that the indictment was procured through a deliberate or reckless misrepresentation of the facts to the grand jury. *Melton v. Phillips*, 837 F.3d 502, 510 (5th Cir. 2016), *reh'g en banc*

38

*granted*, No. 15-10604, 2017 WL 629267 (5th Cir. Feb. 15, 2017). "Any misdirection of the . . . grand jury by omission or commission perpetuates the taint of the original official behavior." *Hand*, 838 F.2d at 1428.

"As applied to the qualified immunity inquiry, the plaintiff must show that the officers could not have reasonably believed that they had probable cause to arrest the plaintiff for any crime." *Good v. Curtis*, 601 F.3d 393, 401 (5th Cir. 2010). With respect to an alleged false arrest, an officer "is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [he] was aware, there was a fair proba- bility that [Plaintiff] had committed or was committing an offense." *Haggerty*, 391 F.3d at 656. "Even law enforcement officials who reasonably, but mistakenly, conclude that probable cause is present are entitled to immunity." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Anderson v. Creighton,* 483 U.S. 635, 641 (1987); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).

Within the bounds of reasonableness, officers have "some latitude" to detain individuals when "the intrusion on the citizen's privacy" is "'much less severe' than that involved in a traditional arrest" and "opposing interests in crime prevention and detection and in the police officer's safety" support the reasonableness of the seizure. *Bailey*, 568 U.S. at ___, 133 S. Ct. at 1037. These lesser detentions may be "justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity." *Michigan v. Summers*, 452 U.S. 692, 699 (1981). To overcome a qualified immunity defense with respect to a claim of unlawful detention that falls short of an actual arrest, the Plaintiff must establish that a detention occurred which "was not based on reasonable suspicion supported by articulable facts that criminal activity was occurring." *Coons v. Lain*, 277 F. App'x 467, 470 (5th

Cir. 2008) (per curiam) (citing *Terry,* 392 U.S. at 30); *accord Peterson*, 588 F.3d at 845.

Under the facts alleged in the amended complaint, Plaintiff has stated a plausible claim for an unreasonable search and seizure against Officer Woods and Detective Wilson. According to the amended complaint, Woods had no warrant, probable cause, exigent circumstance, or consent from Plaintiff to enter into his home, search and damage the home and its contents, or arrest or detain him. Given the alleged manner and circumstances of the search and seizure, Plaintiff has stated a plausible Fourth Amendment claim against Officer Woods for his role in the search and seizure on September 4, 2015, and the Court should find that qualified immunity does not shield him from the Fourth Amendment claims under the alleged facts.

Woods argues that Plaintiff has failed to show that he entered his home. *See* Woods Mot. at 24. However, Plaintiff's burden to overcome a motion to dismiss is to provide sufficient factual allegations to state a claim, including facts to overcome an asserted qualified immunity defense. Plaintiff has alleged that Woods entered his home and participated in the events of September 4, 2015. That allegation is sufficient for purposes of ruling on a Rule 12(b)(6) motion to dismiss.

Woods also contends that exigent circumstances such as a "need to assist person who are seriously injured or threatened with such injury," may overcome a presumptively unreasonable warrantless search of a home. Woods Mot. at 16 (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). That contention ignores a very important fact – Plaintiff has alleged no facts to support that need. By asserting his qualified immunity defense through a motion to dismiss, Woods has chosen the standard by which the Court must judge the factual allegations of Plaintiff's complaint and under that standard Plaintiff has alleged facts that state a plausible search and seizure claim against Woods and overcomes his qualified immunity defense.

Although the facts differ with respect to Detective Wilson's arrest of Plaintiff in October 2015, the result is the same at this stage of the litigation. Plaintiff alleges sufficient facts to find that the indictment leading to that arrest was tainted by factual misrepresentations from Woods and Wilson for an affidavit signed by Detective Tatum. Because Plaintiff alleges that Wilson knew of the misrepresented facts used to secure the indictment, Wilson could not have held a reasonable belief that he had probable cause to arrest Plaintiff under the alleged facts. Qualified immunity does not protect him for the Fourth Amendment violation based on his arrest of Plaintiff. Under the facts in the amended complaint, Plaintiff has stated a plausible claim for an unreasonable seizure against Detective Wilson and the Court should find that qualified immunity does not shield him from knowingly arresting Plaintiff in October 2015 without probable cause.

The Court should deny the motions to dismiss to the extent Wilson and Woods seek dismissal of these Fourth Amendment claims.

### (3) Excessive Force

Plaintiff sues Officer Woods for "violently and roughly laying hands" on him during his arrest on September 4, 2015. *See* Am. Compl. ¶ 59(a). Both Woods and Plaintiff treat this as an excessive force claim.

The Supreme Court long ago held that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). As noted in *Graham*, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. To state a claim of excessive force under the Fourth Amend-

41

ment, Plaintiff must allege that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (addressing claim in context of summary judgment); *accord Geils v. Patin*, 941 F. Supp. 2d 722, 727 (N.D. Tex. 2012) (same).

Because reasonableness depends on the totality of the circumstances, the courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Furthermore, the reasonableness inquiry examines the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

The injury component exhibits a judicial recognition that not "every contact between a citizen and a police officer" is sufficient for an excessive force claim. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). To determine whether an injury is de minimis and thus insufficient to satisfy the first element of an excessive force claim, the courts "look to the context in which [the excessive] force was deployed." *Id.* "The level of injury required to 'establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Benoit v. Bordelon*, 596 F. App'x 264, 269 (5th Cir. 2015) (quoting *Williams*, 180 F.3d at 704).[7] When "the use of force [is] unnecessary, the extent of injury needed to exceed the de minimis level is low." *Id.*

---

[7]Cases addressing excessive force under the Eighth Amendment are relevant in the Fourth Amendment context because a similar standard applies to excessive force claims under both amendments. *See Ikerd v. Blair*, 101 F.3d 430, 434 n.9 (5th Cir. 1996) (recognizing interplay between the two standards and stating that there is "only one inquiry . . . to determine whether an officer used excessive force under the Fourth Amendment").

42

Woods seeks dismissal of this claim on grounds that Plaintiff never alleges when or how he touched Plaintiff, makes no assertion of any injury due his alleged misconduct, and makes no allegation that the use of force was excessive to the existing need. Woods Mot. at 17-18. To the extent Plaintiff asserts a claim of excessive force against Woods in his amended complaint, such claim is limited to the allegation that Woods violently and roughly laid hands on Plaintiff on September 4, 2015. It is unclear from Plaintiff's response to the motion whether he attempts to broaden the claim, *see* Pl.'s First Am. Resp. Woods Mot. at 19-21, but the Court is limited to considering the claims asserted in the pleading in any event.

Under the facts alleged, Plaintiff had neither committed an offense nor was he in the process of doing so. He posed no immediate threat to anyone. Woods and others burst into his home without a warrant or notice. Their entry was chaotic, but Plaintiff did not actively resist arrest or attempt to flee under the facts in his amended complaint. Rather than identify specific actions taken by Woods, Plaintiff alleges that the invading group led by Woods took various actions against him, including forcing him to the floor, roughly laying hands on him, and handcuffing him.

Although Plaintiff combines the actions of various officers with respect to his seizure at his home on September 4, 2015, he clearly alleges that Woods roughly laid hands on him. Furthermore, he appears to attribute each action of the collective group of home invaders to Woods and, for purposes of a motion to dismiss, it is reasonable to infer from the amended complaint that he alleges that Woods took each of the alleged actions. Even in the context of summary judgment, "qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). Given the alleged facts, it may be reasonable to find that any amount of force was objectively unreasonable. Similarly, when there is no need for any force,

it is logical to conclude that the use of any force is excessive to the need. However, even assuming for purposes of resolving the motion to dismiss that Woods used objectively unreasonable force that was excessive to the need, Plaintiff's excessive force claim fails for lack of any alleged injury. Plaintiff has simply not alleged any injury resulting from Woods roughly laying his hands on him. Accordingly, the Court should grant the motion to dismiss of Woods to the extent he seeks dismissal of the excessive force claim.

### c. *First Amendment Claims*

Plaintiff sues Defendants Wilson and Woods for retaliating against him after he exercised his First Amendment rights to speak to a member of the press about the events of September 4, 2015. Am. Compl. ¶¶ 59(c), 60(a). He alleges that they retaliated against him by providing incorrect or false information that Tatum incorporated into the affidavit used to secure the indictment, arrest, and prosecution of Plaintiff in October 2015. *Id.* He alleges that the retaliation has injured him and chilled his First Amendment rights through the unfounded criminal charges, arrest, and prosecution. *Id.*

"The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). To state a retaliation claim under the First Amendment in cases brought by "ordinary citizens,"[8] plaintiffs must allege "that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity,

---

[8]In this context, "ordinary citizens" means that there is no "employment or contractual relationship between the plaintiff and the government." *Dickinson Leisure Indus., Inc. v. City of Dickinson*, 329 F. Supp. 2d 835, 846 (S.D. Tex. 2004).

and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Id.* But not all retaliatory acts are "actionable as a violation of the First Amendment;" some are simply "too trivial or minor" notwithstanding any chilling effect. *Id.*

To be actionable in the private context, there must be an "adverse effect" caused by the retaliatory act. *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005). Whether an effect is adverse depends on the context. *Id.* Regardless of context, however, the act must "deter a person of ordinary firmness from exercising his or her First Amendment rights." *Id.* This is a fact-intensive inquiry that considers the status of the speaker and retaliator, the relationship between them, and the nature of the alleged retaliatory acts. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). Whether actions of a defendant "caused an injury sufficient to chill the speech of a person of ordinary firmness is a particularly factual analysis that turns on the extent and nature of the injury." *Bailey v. City of Jasper, Tex.*, No. 1:12-CV-153, 2012 WL 4969126, at *4 (E.D. Tex. Sept. 24, 2012), *recommendation adopted*, 2012 WL 4970809 (E.D. Tex. Oct. 17, 2012).

Here, the speaker is an ordinary citizen and the alleged retaliators are an officer and detective of the City of Abilene Police Department. On the facts alleged, the Court should find that the actions of Wilson and Woods are sufficient to chill a person of ordinary firmness from exercising his right to freedom of speech. Plaintiff has stated a plausible retaliation claim under the standard set out in *Iqbal* and *Twombly*.

Furthermore, on the facts before the Court at this stage of the litigation, neither Defendant Wilson nor Defendant Woods is entitled to qualified immunity on the claimed retaliation. It is clear that "government retaliation against a private citizen for exercise of First Amendment rights cannot

be objectively reasonable" and when "law enforcement officers might have a motive to retaliate but there was also a ground to charge criminal conduct against the citizen they disliked . . . the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Keenan*, 290 F.3d at 261-62. In those circumstances, qualified immunity largely depends on the existence of probable cause. *Id.* "If no reasonable police officer could have believed that probable cause existed for the law enforcement actions . . . against the plaintiff[], then their retaliation violated clearly established law in this circuit." *Id.* at 262. That is the situation on the facts alleged in this case.

### 3. **Municipal Liability**

Plaintiff sues the City of Abilene under a theory of municipal liability. Am. Compl. ¶ 62. To hold a municipality liable under 42 U.S.C. § 1983 "requires proof of three elements: a policy-maker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 866 (5th Cir. 2012) (en banc). "Parties can sue a municipality that has violated their constitutional rights 'under color of any statute, ordinance, regulation, custom, or usage.'" *Advanced Tech. Bldg. Solutions, L.L.C. v. City of Jackson*, 817 F.3d 163, 165 (5th Cir. 2016) (quoting 42 U.S.C. § 1983 and citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

While official policy is normally "contained in duly promulgated policy statements, ordin-ances or regulations," it may also be evidenced by "a persistent, widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citation omitted). An official policy may also result when "authorized policymakers approve a subordinate's decision and the basis

for it," thus ratifying the conduct and making it a policy "chargeable to the municipality." *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 854 (5th Cir. 2009), which in turn quotes *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)), *as revised* (Mar. 31, 2017).

Regardless of the required proof needed to ultimately prevail on a given claim, when ruling on a Rule 12(b)(6) motion, courts examine the factual allegations of the operative pleading to determine whether asserted claims survive the motion. *Groden v. City of Dallas*, 826 F.3d 280, 282-83 (5th Cir. 2016). To survive a motion to dismiss, claims within the operative pleading must contain sufficient factual allegations to comply with Fed. R. Civ. P. 8(a)(2) as interpreted in *Iqbal* and *Twombly*.

In the years following *Twombly* and *Iqbal*, "courts have split as to the level of specificity required for pleading municipal liability claims." *Mitchell v. City of New Orleans*, No. CV 06-4021, 2016 WL 1733627, at *7 (E.D. La. May 2, 2016). In 2011, the Southern District of Texas described the different approaches and formulated an approach to reconcile the *Iqbal-Twombly* standard with the Supreme Court's prior rejection of a heightened pleading standard for § 1983 claims against municipalities set out in *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). *See Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841-45 (S.D. Tex. 2011). Recognizing that (1) *Iqbal* instructs courts to draw on judicial experience and common sense when conducting the context-specific task of determining whether a complaint states a plausible claim for relief and (2) in the municipal liability context, "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery," the court concluded that "only minimal

47

factual allegations should be required at the motion to dismiss stage." *Id.* at 842-43. It set an appropriate balance of "requiring more than boilerplate allegations but not demanding specific facts that prove the existence of a policy." *Id.* at 844.

Other courts, including the Northern District of Texas, have followed this common-sense approach to the factual specificity required for municipal liability claims. *See, e.g., Schaefer v. Whitted*, 121 F. Supp. 3d 701, 718 (W.D. Tex. 2015); *Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1241 (N.D. Okla. 2012); *Mitchell*, 2016 WL 1733627, at *7; *Pena v. Dallas Cnty. Hosp. Dist.*, No. 3:12-CV-439-N, 2013 WL 11299229, at *10 n.16 (N.D. Tex. June 26, 2013); *Taylor v. RED Dev., LLC*, No. 11-2178-JWL, 2011 WL 3880881, at *3 (D. Kan. Aug. 31, 2011). In addition, prior to *Thomas*, one court noted that *Twombly* and *Iqbal* "clarified that the pleading requirement for facts rather than conclusions lies within Fed. R. Civ. P. 8(a), not any heightened pleading standard." *Wright v. City of Dallas*, No. 3:09-CV-1923-B, 2010 WL 3290995, at *3 (N.D. Tex. July 19, 2010) (recommendation of Mag. J.), *accepted by* 2010 WL 3291816 (N.D. Tex. Aug. 19, 2010). The court further noted that "[t]he difference between the Rule 8(a) pleading standard and an impermissible heightened pleading standard is in the factual particularity or specificity needed to state a claim." *Id.* (citing *Twombly*, 550 U.S. at 569 n.14).

The Court should apply the persuasive rationale set out in *Thomas* and the cases following it to avoid the arguable conflict between *Iqbal-Twombly* and *Leatherman*. While the context of a given case does not permit use of a heightened pleading standard to require a plaintiff to "allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief," *Twombly*, 550 U.S. at 570 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)), the context of municipal liability claims in general justify acceptance of minimal factual allegations

48

when a court draws on its judicial experience and common sense to determine whether such a claim survives a motion to dismiss. Thus, as set out in *Thomas*, when

> a plaintiff provides more than a boilerplate recitation of the grounds for municipal liability, and instead makes some additional allegation to put the municipality on fair notice of the grounds for which it is being sued, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later."

800 F. Supp. 2d at 844-45 (quoting *Leatherman*, 507 U.S. at 168–69). At the motion to dismiss stage, minimal factual allegations are sufficient when asserting a municipal liability claim and the "allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general." *Harvey v. Montgomery Cnty.*, 881 F. Supp. 2d 785, 797 (S.D. Tex. 2012) (quoting *Thomas*, 800 F. Supp. 2d at 843).

In this case, Plaintiff's municipal liability claim rests entirely on a factual allegation that the City has stated that none of the individual defendants did anything wrong or violated any City policy or procedure in connection to the events leading to this litigation. *See* Am. Compl. ¶¶ 19, 57. In a footnote, he states that the City has (1) "taken the position that its policies and procedures permitted the improper and illegal/unconstitutional misconduct of the [individual] Defendants" and (2) "ratified that same illegal/unconstitutional misconduct." *See id.* ¶ 57 n.19. Based on those facts, he sues the City on grounds that its policies and procedures permitted the improper misconduct of the individual defendants and the City has ratified the unconstitutional misconduct. *Id.* ¶ 62.

It is clear from the amended complaint that Plaintiff pursues his claim against the City on a ratification theory. He does not rely on any persistent or widespread custom or practice that fairly represents municipal policy. Nor has he identified any official City policy as a basis for his municipal liability claim. Not only does he not identify any specific policy, but he also makes no effort to

identify any policymaker or who from the City ratified the conduct of the individual defendants. Moreover, he alleges no facts about the official policy being the moving force of the violation of his constitutional rights.

Lack of some specifics may not require dismissal of a municipal liability claim. For instance, as the Fifth Circuit held last year, plaintiffs do not need to plead "the specific identity of the policy-maker" to survive a motion to dismiss. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016). However, the *Groden* decision emphasizes that alleged facts determine whether a claim survives summary dismissal under Rule 12(b)(6). *See id.* at 282-83. Succinctly stated in the context of municipal liability, "a plaintiff need only plead *facts* that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Id.* at 282.

Plaintiff has not alleged sufficient facts to make that showing. He does not allege that any individual defendant acted pursuant to any specific official policy. He instead claims that the City ratified their conduct as an official policy given the City's position that they did nothing wrong and did not violate any City policy or procedure. Ratification chargeable to a municipality requires that "authorized policymakers approve a subordinate's decision and the basis for it." *Praprotnik*, 485 U.S. at 127. Plaintiff has neither identified nor alleged that any authorized policymaker approved the decision of any subordinate or the basis for any such decision. Without adequate factual allegations the ratification theory fails to state a claim upon which relief can be granted.

In addition, the Fifth Circuit has not relaxed the causation requirement of *Monell* in the ratification context. *See Camacho v. City of El Paso*, No. EP-15-CV-00318-PRM-RFC, 2016 WL 3519662, at *13 (W.D. Tex. June 22, 2016) (recommendation of Mag. J. discussing Fifth Circuit

cases). Indeed, the Fifth Circuit appears to continue to require that an official policy be the moving force for the constitutional violation even in the context of ratification. *See Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004). Plaintiff has made no factual allegations that any official policy was the moving force of the violation of his constitutional rights.

Ratification, furthermore, "is limited to 'extreme factual situations.'" *Davidson*, 848 F.3d at 395 (quoting *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)). "Good faith statements made in defending complaints against municipal employees do not demonstrate ratification." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010). In light of the general allegations of ratification, the Court should find no basis for finding a plausible claim of municipal liability. Speculation does not save a claim from dismissal under Rule 12(b)(6) and, on the alleged facts, the Court should find no reasonable inference that the City is liable for the misconduct of the individual defendants.

Based on Plaintiff's alleged facts, the Court should grant the City's motion and dismiss the municipal liability claims.[9] The alleged facts do not sufficiently put the City on notice of the grounds for which it is being sued. Courts do "not strain to find inferences favorable to the plaintiff[]" or accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).

---

[9]Dismissing the underlying substantive claim against the City effectively resolves any dispute as to Plaintiff's request for declaratory judgment against the City. Declaratory relief is simply unavailable in the absence of some "judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Without a plausible municipal liability claim against the City, Plaintiff has no basis to obtain a declaratory judgment against that defendant.

## VI.  LEAVE TO AMEND

In general, courts should provide pro se litigants an opportunity to amend before dismissing a complaint. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Leave to amend is not required, however, when plaintiffs have already pled their "best case." *Id.* Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). The circumstances of a case may warrant leave to amend even for represented parties. *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (per curiam). Plaintiffs, however, are not necessarily entitled to remedy pleading defects by filing an amended complaint and they are not entitled to amend their complaint to satisfy pleading requirements for municipal liability when the response to the motion to dismiss merely "declares the adequacy of [the] complaint." *See Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986)).

In this case, Plaintiff has already filed an amended complaint in response to the first round of motions to dismiss filed earlier. In its prior motion, the City raised the same pleading deficiencies with respect to Plaintiff's municipal liability claim. *See* Doc. 15. Likewise, Woods raised the pleading deficiency with respect to the claim of excessive force. *See* Doc. 16 at 14-15. In response to the more recent motions to dismiss, Plaintiff essentially declares the adequacy of his complaint as to the municipal liability claims and makes no attempt to show any injury with respect to the claim of excessive force. Under these facts, it is recommended that the Court dismiss Plaintiff's municipal liability claims against the City and his excessive force claim against Defendant Woods with prejudice and without leave to amend.

## VII. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Court **GRANT** in part and **DENY** in part Defendant City of Abilene's First Amended Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (doc. 26); **GRANT** in part and **DENY** in part Defendant John R. Wilson III's First Amended Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (doc. 27); and **GRANT** in part and **DENY** in part Defendant Jimmy Woods' First Amended Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (doc. 28). The Court should grant the City's motion to the extent it is brought pursuant to Fed. R. Civ. P. 12(b)(6), but deny it to the extent it seeks dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Granting the motion under Rule 12(b)(6) dismisses all claims asserted against the City and terminates that entity as a party to this litigation. The Court should grant the other two motions to the extent they seek to dismiss claims asserted against Defendants Wilson and Woods in their official capacity and to the extent Woods seeks dismissal of the excessive force claim of Plaintiff. The Court should otherwise deny those motions. The dismissal of the official capacity claims against Officer Woods and Detective Wilson, the excessive force claim against Officer Woods, and the municipal liability claims against the City should be with prejudice and without leave to amend.

In light of the recommended partial dismissals, the undersigned directs the Clerk of Court to reassign this case to Senior District Judge Sam R. Cummings in accordance with the Second Amended Special Order No. 3-301. After that reassignment, the undersigned may continue to exercise all powers permitted by 28 U.S.C. § 636(b) unless otherwise directed by Judge Cummings. *See* Second Am. Special Order No. 3-301 at 2.

A copy of this Report and Recommendation shall be served on all parties in the manner

provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this** _25_ **day of May, 2017.**

_____

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**