CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2018 NOV 27 AM 10: 50
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| ROBERT STEVEN REITZ, | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 1:16-CV-0181-BL |
| CITY OF ABILENE, et al., | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The Court has under consideration Defendants' Joint Motion to Strike Plaintiff's Designated Expert Witnesses (doc. 70), which is supported by Defendants' Memorandum in Support (doc. 71) [hereinafter Mem. Supp.] and Appendix to Defendants' Joint Motion (doc. 72) [hereinafter Defs.' App.]. Pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Defendants ask the Court to set the motion for hearing and, after the hearing, to exclude the testimony of retained expert witness, Robert K. Gill, and to strike Plaintiff's designations of two non-retained expert witnesses – Stacie Wirmel and Robert Wallace, Ph.D. Mot. at 1; Mem. Supp. at 1-6.[1]

Plaintiff has filed a Response Pleading to Oppose Defendants' Joint Motion (doc. 81) [hereinafter Resp.];[2] a Brief (doc. 82) in support of that response; and an Appendix to Response Pleading to Oppose Defendants' Join Motion (doc. 83) [hereinafter App. Resp.] that contains five exhibits, including Exhibit III (affidavit and resume of Gill), Exhibit IV (portions of deposition

---

[1]Although labeled as a motion to strike, the body of the motion and supporting memorandum reflect that Defendants seek to exclude the expert testimony.

[2]Within his response, Plaintiff states that only three of the four current defendants have joined the motion to strike, *see* Resp. at 2. n.2, but both the motion and its supporting memorandum show that the fourth defendant (Taylor County) also joins in the motion, *see* Mot. at 1-2; Mem. Supp. at 1, 7. While the purpose of the footnoted statement is unclear, it is clear that the statement is factually incorrect. From the Court's perspective, all current defendants join in the motion to strike.

transcripts of Wirmel) [hereinafter Wirmel Dep.], and Exhibit V (portions of depositions transcripts of Wallace [hereinafter Wallace Dep.]). Defendants did not file a reply brief. The motion became ripe for ruling with the passing of the deadline to reply. For the reasons that follow, the Court denies the motion to strike without prejudice to Defendants filing a similar motion or objections consistent with this order.[3]

## I. BACKGROUND

The Court recently accepted a Third Amended Complaint as the operative pleading for Plaintiff in this action. *See* Mem. & Order (doc. 87). Through that pleading and pursuant to 42 U.S.C. § 1983, Plaintiff sues Officer Jimmy Woods, Detectives John R. Wilson III and Larry Tatum, and Taylor County, Texas,[4] for alleged violations of his constitutional rights. This litigation stems from alleged events occurring in and after September 2015 when Officer Woods and others burst into Plaintiff's apartment without a warrant and ultimately arrested him. As stated in briefing on a pending motion for summary judgment, a 911 call regarding a shooting and possible hostage situation at Plaintiff's apartment commenced the series of events that led to this litigation.[5] *See* Defs.' Woods' and Wilson's Br. Supp. Mot. for Summ. J. (doc. 77) at 7. Not long after his initial arrest and release, Stacie Wirmel of a local television station interviewed Plaintiff about the events leading to his arrest and later televised and published an online news story about what had happened.

---

[3]This case proceeds on the written consent of all parties. *See* Joint Rule 26(f) Report (doc. 46) (consent of all original parties); Consent to Proceed Before a United States Magistrate Judge (doc. 86) (consent of Taylor County).

[4]For ease of reference, the Court will refer to Woods and Wilson collectively as the City Defendants and Tatum and Taylor County as the County Defendants when warranted.

[5]The Court may take judicial notice of matters in the court record. No party appears to contest that a 911 call commenced the events leading to this litigation and the Court is referring to the summary judgment briefing only to add context to the factual situation. Of course, at this point, the Court is making no determination as to the accuracy of the stated facts in the summary judgment briefing.

2

Plaintiff was later re-arrested and charged, but those charges were ultimately dismissed.

In 2017, Plaintiff retained Robert Gill, an attorney in private practice with prosecutorial and judicial experience, as an expert for this case. *See* Aff. Gill ¶ 4. On February 16, 2018, the Court issued an Amended Pretrial Scheduling Order (doc. 55) wherein it set an April 2, 2018 deadline for parties with the burden of proof on a claim to comply with Fed. R. Civ. P. 26(a)(2) and file expert witness designations. It also set a September 5, 2018 deadline for filing dispositive motions, including motions regarding expert witnesses. The court record does not reflect any filed expert witness designation.

On June 1, 2018, Plaintiff deposed Robert Wallace, Ph.D., a department chair and professor of Sociology and Criminology at McMurry University. *See* Wallace Dep. at 4. Plaintiff deposed Wallace "simply as a fact witness." *Id.* Wallace testified that Detective Wilson, a person he did not know, contacted him to compare two voice recordings. *Id.* at 7-8. He "performed this service as a citizen for no fee." *Id.* at 11. After reviewing the recordings, he told Wilson in an email:

> Acting only as a third-party reviewer and not as a voice recognition expert, I found enough dissimilarities between the 9-1-1 caller and the person talking about his phone to have reasonable doubt that they were the same person. In particular, I heard distinct age differences in the voices. If I can be of further assistance, just let me know.

*Id.* at 10-11. Because Wilson had said that he did not need to return the recordings, Wallace destroyed them. *Id.* at 11. In addition to testifying about the voice recordings, Wallace testified that, at a conference, he had presented a paper titled "The Innocent Men: Psychological Adjustments After Exoneration" in which he had concluded that being falsely charged can be a very upsetting experience for a long period of time. *Id.* at 12. On cross-examination, Wallace confirmed that he does not hold himself out as a voice recognition expert, has had no formal training in that field, and is not

3

saying that his opinion on the voice comparison is an expert opinion. *Id.* at 14-15.

Plaintiff also deposed Wirmel on June 1, 2018. *See* Wirmel Dep. at 1. She testified that she is a reporter and news anchor for KTAB in Abilene. *Id.* at 4-5. She graduated from Texas Tech University with training in journalism. *Id.* at 5. As part of her story on October 13, 2015, she stated that Plaintiff was cleared of all charges, but she realized that it was an ongoing investigation and that additional evidence might be found to prosecute him. *Id.* at 35. She testified that, after she ran her story on October 13, 2015, a public information officer of the Abilene Police Department told her that there was more to the story and suggested that she interview Detective Wilson. *Id.* at 47. She did interview Wilson for a follow-up story, but did not air it because the Chief of Police directed her not to run it. *Id.* at 47, 50-52. At the time she made her report and published it, no one had given any indication that they had even a lingering doubt that Plaintiff had committed any misconduct. *Id.* at 14.

Plaintiff states that he designated Wirmel and Wallace as experts at some point following these depositions. In August 2018, the County Defendants supplemented their initial Fed. R. Civ. P. 26(a)(1) disclosures to identify Gill, Wallace, and Wirmel as persons that are likely to have information that they may use to support their defenses. *See* Ex. I to App. Resp. The next month the City Defendants made a similar supplement. *See* Ex. II to App. Resp. Both supplements characterize each of these three individuals as an expert for Plaintiff. *See* Ex. I and II.

Although the record lacks any indication that Plaintiff filed an expert witness designation, Defendants timely moved to strike Plaintiff's retained expert witness (Gill) and to strike Plaintiff's designation of non-retained expert witnesses Wallace and Wirmel. Defendants challenge the qualifications of these three witnesses to render expert opinions and the reliability of opinions from Gill

4

and Wallace. In response, Plaintiff contends that the motion lacks merit and is premature in that no one has offered any expert testimony for any purpose. In addition to deposition testimony noted above, Plaintiff provides an affidavit and resume from Gill to support his opposition to the motion. In his affidavit, Gill specifically states that he is not giving any opinions in his affidavit because it is for the limited purpose of providing information about his qualifications. *See* Aff. Gill. ¶ 5. The motion is now ripe for consideration.

## II. PRELIMINARY MATTERS

First, the Court finds no reason to hold a hearing on the motion despite Defendants' request for a hearing. The general rule in this district is not to hold oral argument on a motion. *See* N.D. Tex. L.R. 7.1(g). Although there are issues with the motion as discussed more fully later in this opinion, the Court finds a hearing unnecessary at this time.

In briefing this motion, no party has provided any expert designation by Plaintiff even though the Court set an April 2, 2018 deadline for complying with Fed. R. Civ. P. 26(a)(2), which addresses disclosure of expert testimony, and for filing expert witness designations. Plaintiff explains that he designated Wallace and Wirmel as experts after deposing them as fact witnesses in June 2018 and realizing that they "had some pertinent expert knowledge." Resp. at 1-2 & n.1. In addition he submits that he has "timely and properly designated experts" and that Defendants Woods, Wilson, and Tatum "appear to have cross-designated" the same witnesses as experts. *Id.* at 2. As grounds to strike or exclude the experts, Defendants do not contest the timeliness of Plaintiff's expert designations or otherwise rely on any procedural deficiency in the expert witness designations. Accordingly, the Court proceeds as though the Rule 26(a)(2) disclosures are both timely and procedurally correct.

5

Nevertheless, based on the information provided by Plaintiff, the Court does not find that Defendants have cross-designated the same experts as he has. As support for the alleged cross-designation of the same experts, Plaintiff provides supplemental disclosures from the Defendants. *See* Exs. I and II of App. Resp. However, as reflected in those supplements, Defendants are merely supplementing their disclosures under Fed. R. Civ. P. 26(a)(1), which governs initial disclosures generally. That Defendants identify Gill, Wallace, and Wirmel as Plaintiff's experts does not reflect that Defendants are cross-designating them as their own experts. Such identification is no more than a reflection that Plaintiff had identified the individuals as his experts. The supplements provide no support for finding that Defendants have attempted to cross-designate the individuals as experts under Fed. R. Civ. P. 26(a)(2).

The Court also finds no prematurity per se in Defendants' motion even though no one has yet to proffer an expert opinion for any purpose. First, the Court's scheduling order clearly contemplates the filing of such a motion on or before September 5, 2018. Unless modified, that scheduling order dictated that Defendants make the motion before Plaintiff responded to their motions for summary judgment. Second, absent stipulation between the parties or order of the court, the expert disclosure requirements of Fed. R. Civ. P. 26(a)(2) require disclosure of "a complete statement of all opinions" to be expressed by a specially retained or employed expert, *see* Rule 26(a)(2)(B)(i), and for other experts, "a summary of the facts and opinions to which the witness is expected to testify," *see* Rule 26(a)(2)(C)(ii). Under these rules, the substance of expert witness testimony may be evaluated prior to any actual reliance on the testimony at trial or related to a dispositive motion. Although the Court ultimately finds issues with the current motion which limit its consideration of the matters raised, it does not find the motion premature.

With these preliminary issues resolved, the Court considers the motion as presented by Defendants.

### III. MOTION TO STRIKE

Prior to any attempted admission into evidence, Defendants seek to strike the testimony of a retained expert witness (Gill) and to strike designations of two non-retained expert witnesses (Wallace and Wirmel) pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Mot. at 1; Mem. Supp. at 1-6. They argue that the witnesses are not qualified to give expert testimony against them. Mot. at 1; Mem. Supp. at 3. They urge the court to exclude the experts as unqualified because the former judge "is simply providing a legal opinion as to what he believes should have been done in this case – which is the province for this Honorable Court," and the two non-retained witnesses lack "any specialized training, education or experience germane to any issue in this case." Mem. Supp. at 3.

Defendants also urge the Court to exclude Gill's testimony as not reliable because his opinions are based on insufficient facts or data. *Id.* at 4. While accepting that "Gill is clearly a highly qualified lawyer and former judge," Defendants contend that his opinions are not based on any scientific data or facts, but he simply opines "that he believes the Defendants acted improperly under the law under the circumstances." *Id.* They concede Gill "is an expert on criminal law," but argue that his testimony is not proper expert testimony because he is not offering forensic expert opinions on what happened in this case, but is offering testimony more like an amicus brief in support of Plaintiff. *Id.* at 4-5. They argue that Gill's opinions invade the province of the court and jury and that he "unjustifiably extrapolate[s] from an accepted premise to an unfounded conclusion." *Id.* at 5.

With respect to Wallace, Defendants submit that his testimony is both unreliable and highly prejudicial because he testified in his deposition that he lacks formal training in voice recognition and that his opinions were not expert opinions. *Id.* Similarly, Defendants argue that the reporter is not an expert on any of Plaintiff's allegations and should only be permitted to testify as a fact witness. *Id.* at 6.

Plaintiff contends that the motion lacks merit, characterizes the issue solely as whether the witnesses are qualified, and submits that they are qualified to render expert testimony. Resp. at 4, 9. He provides (1) deposition testimony from Wirmel to show that she has been trained in journalism at Texas Tech University; (2) deposition testimony from Wallace to show that he is a college professor and department chair; and (3) a resume and affidavit to show that Gill is retired judge and active attorney with extensive experience in the relevant area of law.

## A. Applicable Law

Pursuant to Fed. R. Civ. P. 104(a,) "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible." Applying Fed. R. Evid. 702[6] and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Court acts as a

---

[6]Effective December 1, 2011, Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

gatekeeper for admissibility of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149-52 (1999). "To trigger a *Daubert* inquiry, an expert's testimony, or its factual basis, data, principles, methods, or their application, must be called sufficiently into question." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (citation and internal quotation marks omitted).

The process of making these gate-keeping decisions is within the broad discretion of the trial courts. *Kumho Tire Co.*, 526 U.S. at 152-53. Likewise, whether "to admit or exclude expert testimony" is within the court's sound discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997). Courts should approach such decisions "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

Rule 702 first requires courts to determine whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. The party seeking to use the expert's testimony has the burden to show that the expert is qualified within the meaning of this rule. *Little v. Tech. Specialty Prods., LLC*, 940 F. Supp. 2d 460, 467 (E.D. Tex. 2013).

If the proponent of the expert carries the burden to show that the expert is qualified, the courts must next determine whether the expert's opinion is reliable. The general principles set out in *Daubert* apply to all matters described in Rule 702, i.e., scientific, technical, or other specialized knowledge. *Kumho Tire Co.*, 526 U.S. at 149. In general, the courts must find "a reliable basis in the knowledge and experience of [the relevant] discipline." *Id.* Although *Daubert* listed four factors that might bear on the issue of reliability in a given case, it did not establish a "definitive checklist

---

The 2011 amendments "are intended to be stylistic only" without "intent to change any result in any ruling on evidence admissibility." Fed. R. Evid. 702 advisory committee notes (2011 amend.).

or test." *See id.* at 150 (quoting *Daubert*, 509 U.S. at 593). The trial court has wide latitude to consider a variety of factors to determine the reliability of the expert's opinions in a particular case. *See id.* at 150-52. In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id.* at 150. The party seeking to use expert opinion testimony has the burden to show the opinion reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

Upon finding an expert opinion reliable, the courts must consider "other non-exclusive factors to determine whether the testimony will assist the trier of fact," including (1) relevancy of the testimony; (2) whether the testimony "is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006). Whether testimony will assist the trier of fact "goes primarily to relevance." *Daubert*, 509 U.S. at 591. Rule 702 establishes a "helpfulness standard," and irrelevant expert testimony is not helpful. *Id.* at 591-92. Relevant expert testimony logically advances a material aspect of the case and aids the trier of fact in resolving a factual dispute given its connection to the facts of the case. *Id.* at 591. Determining whether testimony is helpful to the trier of fact essentially depends on whether the underlying reasoning and methodology can be properly applied to the facts of the case. *Id.* at 593.

As a counterpart to Rule 702, Rule 703 addresses the bases for an expert's testimony and related admissibility issues.[7] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th

---

[7] Effective December 1, 2011, Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may

10

Cir. 2004). Through Rule 703, "the trial judge serves as a gatekeeper to ensure the reliability and relevance of expert testimony." *In re MBS Mgmt. Servs., Inc.*, 690 F.3d 352, 357 (5th Cir. 2012). However, Rule 703 does not affect the qualifications of the expert. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

Given arguments by Defendants, Fed. R. Evid. 704(a) is also relevant to issues raised in their motion. Subject to an exception applicable in criminal cases set out in subparagraph (b), Rule 704(a) states that "[a]n opinion is not objectionable just because it embraces an ultimate issue."

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702 opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria.

Fed. R. Evid. 704 advisory committee notes (1972 proposed rules).

Rule 704(a) is not intended to permit an expert witness to offer an opinion as to a legal conclusion. *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *accord United States v. Scop*, 846 F.2d 135, 139 (2d Cir.), *on reh'g*, 856 F.2d 5 (2d Cir. 1988). Furthermore, it is the province of the courts, and not witnesses, to instruct juries as to the applicable principles of law. *See Scop*, 846 F.2d at 140. Permitting " an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen*, 698 F.2d at 240. Nevertheless, factually based testimony more akin to an ultimate factual conclusion that may

---

disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

The 2011 amendments "are intended to be stylistic only" without "intent to change any result in any ruling on evidence admissibility." Fed. R. Evid. 703 advisory committee notes (2011 amend.).

11

dispose of particular issues, if believed, may be admissible. *United States v. Piperi*, 101 F.3d 697, 1996 WL 661104, at *6 (5th Cir. 1996) (per curiam). In short, while there is a strong, general proscription on expert legal testimony, the courts have wide discretion to admit testimony that is helpful to the trier of fact and does not either confuse the jury or usurp the role of the court in instructing about the law. When a party designates a legal expert, courts must consider whether the testimony of that expert would aid the trier of fact under Rule 702.

## B. Application of Law to Facts in this Case

Defendants have moved to strike or exclude expert witness testimony and designations. However, the mere filing of a motion to exclude/strike does not necessarily trigger a full-blown *Daubert* inquiry. Courts may make "a preliminary assessment" as to whether a *Daubert* review is warranted and may defer "pass[ing] on the qualifications" of the witnesses until a later date. *See Tanner v. Westbrook*, 174 F.3d 542, 545 (5th Cir. 1999) (recognizing this procedure by the trial court and stating no disagreement with it), *superseded in part by rule on other grounds*, Fed. R. Evid. 103(a) (2000), *as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). As recognized in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the process for the courts' gatekeeping function lies within their broad discretion. 526 U.S. at 152-53.

Furthermore, it is incumbent upon the movant to sufficiently call into question "an expert's testimony, or its factual basis, data, principles, methods, or their application." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (citation and internal quotation marks omitted). This sufficiency requirement is recognized in *Kumho Tire Co.* with a reference to Part III of that decision. *See* 526 U.S. at 149. In that part, the Supreme Court "further explain[ed] the way in which a trial judge 'may' consider *Daubert*'s factors by applying these considerations to the case

at hand, a matter that has been briefed exhaustively by the parties and their 19 *amici*." *Id.* at 153. The Supreme Court then found that the trial court had reasonable doubts about the methodology used despite having no doubts about the expert's qualifications and further found that the trial court reasonably concluded that the expert's testimony was not reliable after the court examined "the transcript 'in some detail'" and considered the proffered defense for the methodology. *Id.* Part III of the *Kumho Tire Co.* opinion reinforces the discretionary nature of the gate-keeping function and highlights that the party opposing an expert's testimony or its factual basis, data, principles, methods, or their application must initially create a reasonable doubt or uncertainty about the expert to trigger further consideration under *Daubert*. *See id.* 153-58.

Determining whether a movant has sufficiently called into question some aspect of an expert is necessarily case specific. In *Kumho Tire Co.* the trial court initially doubted the expert's methodology and found it unreliable after reviewing a transcript in some detail and considering the defense proffered for the methodology. *Id.* at 153. The Fifth Circuit has recognized that a party may sufficiently call experts opinions into question "by providing conflicting medical literature and expert testimony." *Tanner*, 174 F.3d at 546.

In this case, Defendants have not satisfied the sufficiency requirement of *Kumho Tire Co.* A party seeking a court order has an initial burden to adequately present issues for court consideration. In the instant context, this would at least require the movant to provide the expert designations sought to be struck and to identify with some precision the opinions sought to be excluded. But Defendants do neither. They do not sufficiently call into question any specific testimony or opinion. They do not sufficiently identify what specific opinions are problematic and should not be allowed by the Court. Furthermore, while they briefly touch upon the factual basis for Gill's opinions, they

13

do not sufficiently call into question the factual basis, data, principles, or methods of any proposed opinion or testimony.

If the Court were to find that Defendants have satisfied the sufficiency requirement of *Kumho Tire Co.* and thus find that additional consideration is warranted under *Daubert*, the burden would shift to Plaintiff to show the experts qualified, *Little v. Tech. Specialty Prods., LLC*, 940 F. Supp. 2d 460, 467 (E.D. Tex. 2013), and their opinions are reliable, *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). While the Court could perhaps consider the motion as sufficiently questioning the qualifications of Gill, Wallace, and Wirmel, based on Defendants' express challenge to their qualifications, the express challenge itself is insufficient. First, Defendants concede the legal expertise of Gill. Second, Defendants contend that Gill's opinions improperly intrude into the realm reserved for the trier of fact, that Wallace's opinions about voice recognition lie outside his sphere of expertise, and that Wirmel's journalistic expertise does not address any issue in this case. Thus, despite the arguments of Defendants that these witnesses are not qualified to render expert opinions, their qualifications in their respective fields are not really at issue. From the information before the Court, it is unclear whether Plaintiff even asserts that Wallace is an expert in voice recognition. Plaintiff, furthermore, has provided some information to support finding Gill to be an expert in the legal field, Wallace to be an expert in the psychological aspects of being falsely accused and has expertise related to his professorship, and Wirmel to be an expert in journalism.

For purposes of this motion only, the Court has little to no doubt that each of these individuals qualify as an expert. However, when an expert, such as Wallace in this case, lacks knowledge and experience in the relevant discipline, the issue is one of reliability of the expert's opinion. *See Kumho Tire Co.*, 526 U.S. at 149. Furthermore, with respect to Wirmel, the issue is not whether she

is qualified in the journalism field but whether her opinions are relevant to any issue in this case. Likewise, the issue with respect to Gill is whether his opinions invade the province of the Court and are thus irrelevant or whether his opinions are more akin to a potentially admissible ultimate factual conclusion. These are the matters that may ultimately determine whether the Court admits expert opinions from these witnesses.

The briefing in this case focus on a lack of expertise, but reliability and relevancy are the essence of Defendants' argument against allowing the expert opinions and Plaintiff merely touches upon those matters to a limited extent. Without reviewing the specific opinions to be offered by the experts in question, it is difficult to determine their reliability. Accordingly, the Court declines to consider their reliability or to admit or exclude them at this juncture. If Plaintiff relies on any specific expert opinion in response to a dispositive motion, Defendants may assert whatever objections they deem warranted at that time.[8] Likewise, if this case proceeds to trial, Defendants may move to exclude certain opinions at that time through a motion in limine.

Because issues about the admissibility of proffered expert opinions will likely arise again in this case, the Court has a few last words to clarify the issues. First, without reference to the sufficiency requirement of *Kumho Tire Co.*, Plaintiff mistakenly puts the burden on Defendants to show that their motion is so meritorious that the Court should grant it. Had the Court found the sufficiency requirement satisfied, the burden would have been on Plaintiff to show that his experts are qualified and that their opinions are reliable. Second, in general, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and

---

[8]As amended in December 2010, Fed. R. Civ. P. 56(c)(2) makes motions to strike unnecessary to challenge evidence presented in the summary judgment context. *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) (per curiam).

15

should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). The gatekeeper role "is not intended to serve as a replacement for the adversary system." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). And finally, with respect to Wirmel and Wallace, it appears that their connections with the facts underlying this case provide a sufficient basis to permit them to testify as fact witnesses in any event.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Joint Motion to Strike Plaintiff's Designated Expert Witnesses (doc. 70) without prejudice to the filing of a similar motion or objections consistent with this order. Because the Court previously granted an extension of time for Plaintiff to respond to Defendant Larry Tatum's Motion for Summary Judgment (doc. 73) and Defendants Woods' and Wilson's Motion for Summary Judgment (doc. 76), his responses to those motions are now due twenty-one days from the date of this order. *See* Dkt. Entry 84.

**SO ORDERED this 27 day of November, 2018.**

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**